LOUIS GOTHAINER

*v.*

JOHN GRIGG and others.

The complainant began suit in a justice's court, on which he obtained a judgment, and duly docketed it. Two days after he began the suit, another creditor of the defendant offered to buy complainant's claim at one-half of its amount, or offered to sell complainant his own claim at the same rate, both of which propositions were declined. There-upon such creditor took a conveyance of defendant's land, subject to the mortgages thereon, and with an agreement that he would sell the land to whomsoever the defendant designated, and pay him the pro-ceeds after paying his own and other specified claims or disburse-ments.—*Held*, that such conveyance was valid as against the complain-ant, but must, under the circumstances, be deemed a mere mortgage to secure the creditor's demand, and the premises were ordered sold, to pay, first, the mortgages, then the creditor's debt, and then com-plainant's.

Creditor's bill. On final hearing on pleadings and proofs.

*Mr. J. W. Field*, for complainant.

*Mr. R. Darnstaedt*, for answering defendants.

THE CHANCELLOR.

The bill is filed to set aside as fraudulent, as against the complainant, a deed made February 11th, 1878, to the

defendant, John Pfrommer, by John Grigg and Ann, his wife, for land in the city of Orange, belonging to Mrs. Grigg. The complainant was, when the deed was given, as he still is, a creditor of Mrs. Grigg, and he then brought suit, in the court for the trial of small causes, against her, by summons, returnable on the day of the date of the deed, for the recovery of part of his debt. He recovered judgment in that suit, on the return day of the summons, for $100 and costs, and subsequently (on the next day) docketed it in the court of common pleas of Essex county; and he obtained judgment for the balance of his debt, about $150, against her and her husband in the last-mentioned court, in March, 1878. By the deed, she and her husband conveyed the property to Pfrommer, subject to two mortgages thereon, for $2,300 and interest and unpaid taxes. The consideration expressed in the deed is $5,000. The real consideration was a debt of about $560, due from Mrs. Grigg to Pfrommer. The conveyance was made at the instance and on the request of the latter, who, at the same time, gave Mrs. Grigg an agreement that if, within fifteen months from the date of the deed, she should get a purchaser at a price not less than the amount which he should, at the time, have paid for, or expended on, the property, including debts thereon or therefor assumed by him, with interest thereon, he would, on receipt of such sum, convey the property to such person as she should designate, and that she should have the surplus of the price over the amount of his payments, disbursements and expenses and assumptions. He also orally agreed that she was to have the use of the property, without paying rent therefor, to June 1st, 1879.

It appears that, on the 9th of February, 1878, two days after the complainant began his suit in the justice's court, Pfrommer, with his counsel, who was also at the time the attorney employed by the complainant to collect his debt, and had brought that suit for him, called on the complainant, at his house, and offered to buy the complainant's debt,

Gothainer *v.* Grigg.

if he would sell it for one-half of its amount, offering to sell his own to the complainant at the same rate. The complainant declined to sell his debt, and declined to buy Pfrommer's claim, remarking that he did not want any more. To which Pfrommer replied, " Well, I will get ahead of you, anyhow." The complainant then remarked that he did not see how he could get ahead of him, seeing that he had begun suit and Pfrommer had not; and the latter said : " Well, we will fix it so that I will get ahead." Pfrommer appears then to have proceeded to obtain the conveyance from Mr. and Mrs. Grigg, and got it on the consideration before stated.

The proof does not satisfy me that there was any fraud in his conduct in the matter. He appears to have apprehended that the complainant, by means of the legal proceedings which he had instituted, would exhaust Mrs. Grigg's property. It appears to have been worth about $5,000, but was encumbered by mortgage for $2,300 of principal, besides interest. In that apprehension he offered (but without any consultation with Grigg or his wife) to buy the complainant's debt at fifty cents on the dollar, or to sell his own at that rate, and, failing to do either, he appears to have determined to secure his own debt. Grigg and his wife testify that Pfrommer, as part of the consideration of the conveyance to him, was to pay the complainant's debt; but he denies it. The written agreement is the best evidence of what the contract was, and it does not provide for the payment of that debt.

I see no evidence of any fraudulent design on the part of Grigg and his wife, or either of them. Pfrommer evidently designed to outstrip the complainant in the collection of his debt, and to that end he probably made some oral promise, or said what was understood by Grigg and his wife to be a promise, to pay the complainant's debt. Under the circumstances, he ought to have no benefit of the property beyond the payment of his debt. The transaction between him and Mr. and Mrs. Grigg was substantially a mere

mortgage of the property to pay his debt. It will be so regarded, and the property will be sold, subject to the mortgages which were on it when Pfrommer took his deed, to pay, first, Pfrommer's claim, and then, the complainant's debt and costs.

There is no evidence of fraud on the part of Mr. Darnstaedt, Pfrommer's lawyer, who is made a party to the suit. He is entitled to costs against the complainant. Pfrommer is not.